1-822-28 Atlantic Medical Center, et al. v. Commonwealth of Puerto Rico, et al. 1-912-02 Corporacion de Servicio Integral v. Commonwealth of Puerto Rico, et al. Good morning. Good morning, Your Honors. I would like to reserve, my name is John Mudd. I am Counsel for Servicios Integrales en la Montaña, Corporacion de Servicios. I would like to reserve two minutes of my time for rebuttal. If I may. You may. Thank you. Your Honor, APA League continuously says that Rule 407, 4807 of the bankruptcy rules is not applicable here because Section 523 of the Bankruptcy Code has not been adopted in PROMESA. Although that is true, it's not entirely true. What happens is that Section 523 has to deal with the exceptions to the discharge. In PROMESA, we have Article 7 and we have Section 304, which this Court in the migrant case decided that it was an exception to the discharge. Now, in addition, we go to Article 301 of PROMESA, Section 301 of PROMESA, and it has a whole list of Bankruptcy Code sections that are applicable in Title III. Are you not going to start with your standing or a rightness rather? If you want me to. Isn't that a threshold question? Sure. Okay. Rightness. The problem here, Your Honor, is that the plan of adjustment is either approved or it isn't. Now, if the plan of adjustment is not approved, number one. So if we don't know what the plan of adjustment is going to say about this debt. No. Actually, Your Honor, I'm sorry, but yes, we do. Okay. There was a plan of adjustment filed on the 27th of September. There was an amended plan of adjustment that was filed on the 28th of February. Either the plan of adjustment is approved or it isn't. If the plan of adjustment is not approved, two things may happen. One, dismissal of the bankruptcy under Section 930 of the Bankruptcy Code, or the Court could say, I'm going to give you some more time to deal with it. So that may happen. In addition, there are other cases. There are other parts of the government of Puerto Rico which are not in Title III and may go into Title III. For example, the municipalities. That's an issue that is going to be recurrent. Does the second plan of adjustment deal with this debt at all? It deals with it and puts it in Class 41, which is general unsecured creditors. There is no class for a debt that is non-dischargeable. Okay. So she put it in that class because there's no class for non-dischargeables, but we still don't know if she is going to deem it at some point non-dischargeable. No, because the Court said, one thing is what the Court said, one other thing is what the appellants are arguing. The Court said, you can't do this until the plan of adjustment is filed. The plan of adjustment has been filed, and theoretically according to the judge we can file a motion saying, please decide if this is dischargeable, number one. But the appellants say, no, no, no. You have to wait until the plan of adjustment is approved, and then the Court can deal with that. I'm sorry. No, no, go ahead. No, you go ahead. That's very good. So since the premise of the District Court's decision is no longer applicable, I mean the premise was no plan of adjustment, now we have a plan of adjustment, why shouldn't we send it back to the District Court to deal with the new reality? I mean the District Court could not have been more explicit about the basis for its decision. Is there not ground for us to send it back now? Everything has now changed. I agree that everything has changed, and that's what the Court made clear. However, again, I go and say that this conduct, this issue of when it can be filed, will come up again, especially if the plan of adjustment is not approved. And then there will have to be another plan of adjustment, and there will be a part of the time in which we don't have anything going on. And then right now we have what is called the confirmation express, which is everything that has to do with the plan will be left for the confirmation hearing, which is right now from between October 21st and November 6th. Also, Your Honor, in this case, the appellees are arguing, no, no, no. It's not when the plan of adjustment is filed. It's when the plan of adjustment is approved. Then the Court can go in to decide whether this is a chargeable or not. So your position would seem to be that the Board has now tipped its hands. We now know how they want to treat your clients. Correct. And so given that, you want us to issue a declaratory judgment with respect to your impairment and discharge claims, the merits claims. Is that what you want? No, no, no. The issue of whether this is chargeable or not has not been decided. The issue is when can we file it. Yeah. And that's the whole point here. Our position is that Rule 4807 is clear. It can do it at any time. And it is applicable here because we have discharged sections in PROMESA. It has nothing to do with 523. The Court said, no, no, I'm sorry. You have to wait until the plan of adjustment is filed. And that's where your question comes in. My point is that this is something that can happen again very easily because there is possibly and it's very important. The Government of Puerto Rico has opposed the plan of adjustment, much to everybody's surprise. And we have a schedule, which was imposed on Wednesday. And everything is going to be expedited, as I said. We're talking about a plan of adjustment and disclosure statement of 1,967 pages. And we will have the hearings between October 21st and November 6th. And the plan may or may not be approved. Is it not approved? It is dismissed. Or the Court will say, guys, get together. When that will happen, how that will happen. And then on the meantime, we still have no possibility of filing something because the Board is going to oppose it also, saying, oh, no, no, it's not when the plan of adjustment is filed. It's when it is approved that the Court will determine whether this is dischargeable or not. That's when we say this is something that can be repeated again. So what is the declaration that you want? We want, well, the declaration we want is, is this debt dischargeable, yes or no? What we want from the Court here is for it to determine that. The time to file the motion is like Rule 4807B says, at any time. Not when the plan of adjustment is finally filed or when police say, no, no, no, when the plan of adjustment is approved. We believe that that is an important thing. And the legislature said, the Congress said, rules will apply, the bankruptcy rules will apply, Section 310. It didn't say except Rule 4807, like something similar was done in 301 of PROMESA. Here they said, no, no, the bankruptcy rules apply to this procedure. So therefore, Rule 4807B in particular is saying that at any time you can file it. And that's our point in this appeal. Oh, are you finished? You have one minute and seconds. I wanted to make sure there have been no negotiations as to the dischargeability of this debt. In the supplemental brief, the Board says that we were denegotiating. Sure, denegotiating other stuff, but not the dischargeability of this debt, which is the issue we have before us. Thank you. Ms. Bacon, good morning. Good morning. Nicole Bacon on behalf of Appellate Federally Qualified Health Centers in case number 18228. Your Honors, we are asking that the court reverse the dismissal from the district court. The claims are ripe, and there is an active dispute as to the dischargeability and impairment of our client's claims. As of today, the Commonwealth of Puerto Rico has never paid appellate federally qualified health centers pursuant to the Medicaid Act, despite the long-going litigation as well as their representations to the court. The court has upheld the rights of our clients for payment and the obligations of the Commonwealth to make the payments time and time again. And that requirement in federal law requires that the Commonwealth make those payments no less frequently than every four months. And that has never happened. Appellants concede in their brief that the time is now to make the determination as to the dischargeability of our client's claims, by saying that the court must determine whether Section 304 of PROMESA prevails over Section 944 of the Bankruptcy Code. The court can read those sections together, but there is nothing in Section 944 that prohibits the declaratory relief that we have. There is nothing that we are requesting from the court. This court can... Can you please articulate for me what that declaratory relief is? We're asking essentially that our claims be found to be outside of the PROMESA process. We're asking that the court find that the provisions in PROMESA say that we should not be in the line at all, and that our claims should be able to continue outside of the process, that we should not be able to... Are you completely aligned with counsel who just appeared? Your position seems somewhat different than his. Your Honor, we're not in conflict with the position, but what we rely on are the provisions in PROMESA, and the fact that the court should look at the provisions in PROMESA, specifically the provisions regarding federal programs, along with the Medicaid Act, the state plan that Puerto Rico has agreed to the federal government, that it would pay our clients in the manner that we seek, as well as Section 330, which governs the operations of our clients. So you're saying you want a declaration that the claims of your clients are outside of PROMESA, cannot be... And I thought I was asking that of prior counsel, and he said, no, no, that's not what we're seeking. That is what we're seeking, whether this court makes that determination, or whether the district court makes that determination. It is a question of law, so this court does have the authority to make the determination that our clients do not need to participate in the confirmation process, we are outside of PROMESA altogether. That's what we're asking. Explain, what is the difference between your discharge and impairment claim? Your discharge would mean that the commonwealth would not have to make the payments at all. Impairment would be a dilution or reduction of our claims. That's what the plan of adjustment seems to propose, a modest reimbursement for your clients. Is that what you mean by an impairment? That's correct, your honor. That any reduction in our claim is unlawful under the terms of PROMESA, as well as the Medicaid Act. So you would like a declaration that the Title III proceedings cannot do either? That's correct. Discharge or impair? That is correct. Have you filed an objection there? I'm sorry? Have you filed an objection there to the plan of adjustment? The plan was just proposed recently, and so we have not been able to file an objection at that point. We still believe that it would be prudent for the court to enter the declaratory relief that we're asking here. Filing an objection with the confirmation process would require our clients to be in a new set of litigation that would be very costly and unnecessary. Our clients provide services to the most vulnerable populations, healthcare services, which is what the provisions in PROMESA actually address. So our clients provide those services. We are seeking to be paid in full, as the law requires, because our clients provide these services and their actions are directly directed by the federal agency, and we are required to use those funds to provide healthcare services to underserved communities in the commonwealth. Counsel, doesn't Judge Thompson's question reveal that your claims are still not ripe in the sense that you have an opportunity to file objections in the Title III proceedings? We don't know what the outcome would be, and if you get an unsatisfactory outcome, there is relief available to individuals who have objected and don't get the relief they seek. You can get relief from that, right? Your Honor, I would disagree. The process of dealing with confirmation we believe would be harmful. We think that it is unnecessary for our clients to have to engage in that litigation. As appellees have already acknowledged, our claims are ripe. They state explicitly in their brief that once a proposed plan of adjustment has been filed, which it has, that the court should make a determination as to... Well, they moved the ball a little bit now, right? Now it has to be confirmed, right? That's correct. But there is nothing that prohibits this court making a determination or the district court making a determination, the declaratory relief that we're requesting prior to the confirmation process. So just because they argue before Judge Swain that this new position that, no, they have to wait until there is an accepted plan, I mean, that doesn't mean Judge Swain has to accept that argument. Judge Swain's decision is premised on the idea that there was no proposed plan at the time that her decision was made. We felt that our claims were ripe at that time, but at least at this time, there's no question. Judge Swain and appellees have said that once a proposed plan is provided, that our claims are ripe. So what I'm trying to figure, why don't you think she would entertain your argument there? I understand the expense and aggravation and being in two different forums, but why don't you think she would entertain your argument as to whether your claim can't be impaired or discharged? She could consider our claims at that time as well. We don't think that the court should take lightly the fact that we have additional litigation costs. All money spent on litigation is funds that are not spent in providing the health care services that our clients provide to the vulnerable populations in Puerto Rico, as they are required to by Section 330, and as they are required to by Section 330 in the Medicaid program as well. Your Honors, the sections of PRO MESA that deal with federal programs, as we've argued in our brief, are Section 304H, which deals with the dischargeability, that the court can look at that right now and make a determination that our clients' claims are non-dischargeable. In addition, Section 7 prohibits that any provision in PRO MESA be used to relieve the Commonwealth of its obligations as it has made before the federal agency and CMS by accepting Medicaid funds and as a condition, paying our clients in a manner consistent with the statute. Counsel, can you think of any instance since this PRO MESA litigation began where the Court of Appeals has decided those critical issues in the first instance without allowing the Title III Court to address those issues? Have we ever? In this relatively short history, have we ever done that? Not to my knowledge, Your Honor. The Court has not made any rulings with respect to the dischargeability. In a related case, the Court has looked at Section 7 with respect to the automatic stay,  so this is actually basically an issue of first impression. If I may reserve the remainder of my time for rebuttal, unless there are any further questions. You may, but you don't have very much time left. Thank you, Your Honor. Ms. Alonzo, good morning. Good morning. Good morning, Your Honors. May it please the Court, my name is Julia Alonzo. I'm from the law firm of Proskauer Rose, and I represent the defendant, Apelli, in this appeal. The district court properly dismissed both of Appellant's requests for declaratory judgment as unripe, and therefore, the consolidated complaint does not pose a case of controversy under Article III. When do you think it becomes ripe? Is it now that a plan of adjustment has been filed? Is it ripe now? No, Your Honor. It is not ripe now because a plan of adjustment has simply been proposed. As we explained in our supplemental briefing filed earlier this week, the case would not be ripe until a confirmation hearing, and that is borne out by the decision from last year by this Court in the Aurelius Capital Master case, in which this Court held that at the time of confirmation is when all decisions regarding the treatment of claims will be decided, including whether claims will be discharged. The Board may at any point between now and when a confirmation hearing commences amend the plan of adjustment under Bankruptcy Code Section 1127. In fact, that amendment, assuming that it does not adversely impact any of the parties, may be proposed and filed without even needing to seek additional votes among all of the parties affected if no individual claimant's treatment is adversely changed. Therefore, this proposed plan that was filed last week, same as the plan that was filed back in September, are merely proposals, and the Commonwealth is in the process of negotiating with many parties, including appellants, to hopefully achieve a more consensual plan of adjustment at some point between now and the scheduled confirmation hearing. So, first of all, I wanted to address the impairment claim. As I said, the impairment claim is unripe at this time because it is unclear whether or not appellants will in fact have any type of impaired, will have any impairments on their claims from the Commonwealth Court. They may be paid in full based on a plan that is to be filed. Moreover, even if this Court does find that the question of impairment is ripe, we would submit, as we explained in our initial brief, that the impairment claim must be dismissed on the merits based on the application of the Municipality of San Juan decision, which dealt with an almost identical group of appellants and found that their claims are in fact subject to the automatic stay and do come within the bounds of PROMESA. I thought the impairment claim there was that simply being subject to the automatic stay and hence all the time would have to go by before they could get any relief, that the application, that delay itself was a form of impairment. It sounds to me like they're making a different impairment claim here. Here they seem to be arguing that if their claim is not fully realized, that's a different kind of impairment. That's what they're worried about now. Isn't that a different kind of impairment? I would submit that they're making actually both arguments. So as to the first, that their claims have been impaired by nature of the fact that they have not been paid yet, that would be squarely dealt with by the decision in the San Juan case. But as to the monetary impairment, first of all, it would seem incongruous for the court's decision that they may be impaired by certain provisions of PROMESA but not by others, would not necessarily make sense. But more importantly... What's incongruous about that? Well, because the decision in the municipality of San Juan case looked at specific provisions of PROMESA and all of the same arguments as to why the automatic stay may impair them are present as to, or would apply equally here as to economic impairment of their claims. Now, isn't the logic of your position that these declaratory judgment actions are not ripe? They will only be ripe when there is a final determination by the Title III court. At that point, the relief they seek will be very different. They'll no longer be seeking a declaratory judgment. They will be seeking relief in some appellate form from the decision that is made by the Title III court. So that will be a very different kind of action. It sounds like what you're really saying is they'll never get an opportunity to argue for the declaratory relief that they're seeking. Isn't that the logic of your position? Yes, Your Honor. What we're saying is that no sooner than the time of confirmation, when the confirmation hearing commences, will the Commonwealth's position as to their claims, regardless of both impairment of their claims, the financial impairment of their claims, and the dischargeability, no sooner than the beginning of the confirmation hearing will the Commonwealth's position be... So there's no place in these proceedings for declaratory judgment actions. That seems to be what you're saying. Isn't that correct? Not at this time. Well, not ever, right? I'm sorry? Not ever, based upon the way you're theorizing it. Because if there's an adverse ruling by the bankruptcy court, then it'll be a different kind of appeal, won't it? It would be a different kind of appeal as put forward in PROMESA and in Title III. Right, so it wouldn't be a declaratory judgment. In other words, you're saying that you want these courts to stay out of it, period, until the bankruptcy court deals with it. Correct, Your Honor. Moving on to, if I could, on to the dischargeability claim, and to respond to some of the arguments made by counsel for appellants. Although appellants are correct that the district court did speak in terms of proposal of a plan of adjustment, that was simply based on when the district court's opinion came down. However, the rationale for the district court's decision and ultimate finding was not simply the proposal of a plan. It was whether or not the Commonwealth will, in fact, seek to discharge these claims. And as I explained previously, that does not happen until a confirmation hearing is commenced. Well, we now know that the Commonwealth is seeking to impair their claims dramatically. Exactly, Your Honor. At this point, things are too in flux for any decision to be made such that anything would be unripe. And that goes to the first prong of ripeness, to the fitness prong. As to the hardship, we are incredibly sympathetic. The Board and the Commonwealth in general is incredibly sympathetic to the position of appellants and to the other federally qualified healthcare centers. And we understand the vital importance that they play on the island. However, and frankly, that is part of the reason why we are engaged in these negotiations with them and with many other parties. However, it would be unfair to all of the parties beyond just the healthcare centers who are affected by the financial condition of the island and that are wrapped up in the plan of adjustment to engage in value judgments now in this forum to determine who should be excised from PROMESA and from the title III. Counsel, their position is they shouldn't be swept up in this process at all. They rely on provisions of PROMESA that make clear that they have a statutory entitlement to reimbursement. And that right, by the terms of PROMESA's argument, cannot be impaired. And the debts of the Commonwealth to them cannot be discharged. So they're not saying we're not trying to compete with other creditors. They're saying we shouldn't have to compete at all because of the statutory protections that we have. And I agree that that is their position. However, I would say that that position is incorrect because the three provisions of PROMESA on which they rely do not, in fact, say what appellants argue that they say. And I could go through that. Okay, but why shouldn't the district court in the first instance now address those claims? Something has changed. The plan of adjustment, at a minimum, would impair their rights. It's pretty hard to believe that out of this process from 3.9 percent reimbursement to total reimbursement, that doesn't seem like it's going to happen. Arguably, given that plan of adjustment, certainly their impairment claim would be ripe. Well, first of all, to respond to your last point, there are certain classes of payment, certain classes of claimants that have gone up to full payment of their claims, notably the gracia gracia class of claimants that I believe was up before this court last year. So it is not just possible. There are examples of classes of claimants getting paid their claims in full. However, this court may consider the application of your decision in the San Juan case to this case here without remanding for the simple reason that, although it was not argued below, although the district court did not have the opportunity to since the San Juan decision came out after the district court offered its opinion, because under U.S. v. George, which is a decision from this court in 2013, this court may affirm a decision based on any reason that is made manifest, even if not argued and present on the record below. And these three provisions of PROMESA are certainly made manifest in this case as they are the basis for at least the Atlantic Medical set of appellants' entire complaint. However, based on the interpretation of those three provisions from the San Juan case, none of them actually have an effect of excluding appellants' claims from PROMESA, even though the San Juan case did only deal with the automatic stay because that was all that was before it at that time. Those same interpretations from this court's decision would also exclude them from the automatic, would also serve to not exclude them, excuse me, from application of PROMESA and the debt restructuring in general. And I can go through those reasons why. First of all, as to Section 7, the appellants here do the exact same thing that appellants in the San Juan case did, which was they excluded the introductory phrase except as otherwise provided in this chapter. As this court found in the San Juan case, the inclusion of that phrase means that if there are provisions of PROMESA that expressly would serve to impair compliance with federal law as enumerated in the rest of Section 7, those provisions would apply. This not only accepts the automatic stay provision from Section 7's scope, but does the same thing with the remainder of the debt restructuring process that is laid out in Title 3. Appellants also base their argument on Section 204D, and Section 204D held that this section does not, I'm sorry, San Juan held that Section 204D does not include the automatic stay because it requires the board taking action and the automatic stay does not require them taking action at all. But beyond the automatic stay, Section 204D is a very narrow section. It is in Title 2. It is not in Title 3. And it is within Section 204, which only addresses the Oversight Board's review of Commonwealth actions as compliant or not with the fiscal plan. That is completely irrelevant to this case, and so we would submit that Section 204D has no bearing on whether or not appellants' claims may be subjected to the restructuring process. And as to the final section, Section 304H, this Court did hold, as I believe Council, my Council, Appellant's Council stated, that this Court held in San Juan that Section 304H bars the discharge of obligations arising under federal, police, or regulatory laws. So, first of all, this goes to the question of whether or not it is ripe at this time for a Court when we don't know whether that discharge will happen or will be sought to happen. So, I'm not going to go into how to interpret that provision. But more importantly, Section 304H uses the term federal, police, or regulatory laws. That same language is used in Section 362B-4 of the Bankruptcy Code, which is incorporated into PROMESA. And there have been numerous opinions in this Circuit and in others that hold that federal, police, and regulatory laws should not be used, should not be viewed in terms of actions to recover a pecuniary interest. They should only be looked at in terms of ongoing compliance obligations and monetary relief only in terms of punitive fines or things like that, but not to recover lost funds from parties such as appellants. So, for all of those reasons, we would argue that should this Court disagree with the District Court's decision and find that the impairment claim is in fact ripe for review, this Court does not need to remand it since it would solely be a legal fiction. And in the interest of judicial economy, this Court can simply apply the interpretation of those three provisions from the San Juan case in order to dismiss appellants apparently on the merits. You're saying that the San Juan case decided those issues in exactly the terms that you're arguing them here? It just... It sounds to me like you are making an argument that we, for the first time, should apply those clauses in the way that you're arguing to preclude the kind of discharge claim that they're making here. Isn't that what you're doing? In part, yes, as to 304-H. However, this Court may simply not engage in that by finding, as Your Honors pointed out earlier, that the impairment claim is not even ripe at this point because there is no definitive position from the Commonwealth as to how the plan of adjustment will at confirmation treat these claims. If Your Honors have no further questions, we ask that the District Court decision be affirmed. Thank you. Counsel, in your comments, could you please explain how your position relates to, not co-counsel, but fellow counsel's position? Okay, Your Honor. I would love this Court to decide the issue of dischargeability. But number one, it hasn't been briefed. Number two, that would be jumping a step that circuit courts have always said. You have to have a final decision below in order to do that. And frankly, we don't have it. We have only a decision that is dismissed without prejudice saying, okay, guys, you can't do it now. You have to wait until a plan of adjustment is filed. So that's my position. Also, Your Honor, I want to make clear that when we talk about discharge and bankruptcy proceedings, what it means is that there is a change in how you're going to be paid. And maybe you're going to get zero, or like here, we're going to get 3.9. And anything below 100 would be part of the discharge. It's a new change. Okay, I want to make clear in the Aurelius case that Judge Flores decided in 2019. The comment that Judge Flores... Is there a final decision yet? Excuse me? I don't think there's a final decision yet. I'm not talking about the one that is actually on the Supreme Court. I'm talking about the other one. I misunderstood. Yeah, Aurelius is one of the several... The common name. Yeah. The thing is that in that, when they quote you, you're talking about the particular cause of action of impairment of your takings clause. The takings clause has a peculiar requirement that the Commonwealth of Puerto Rico has to put a position. And that position had not been placed there. Okay? It's different from what we have here, which is a discharge issue. Okay? Going to migrant. Migrant, there is a clear distinction in the opinion saying, okay, Article 7 does not apply to the automatic state. Then it goes and say, Section 304 deals with discharge, not with automatic state. Very big difference there. I think my time is up. Thank you. Your Honors, I'd just like to point out that appellees are changing the position that was stated in the brief. The brief states that until a plan is proposed, it will be unknown whether the court will need to determine whether Pro Mesa 304H prevails over Bankruptcy Code 944 or not. The plan has been proposed and our claims are now right. In addition, at this time, we have not had any negotiations with the board regarding our claims whatsoever. We ask that this court either reverse the decision of the district court and remand it, or if the court feels that it can rule at this time that the court determine that our client's claims should not be discharged and may not be impaired in the Pro Mesa process and uphold the decisions of this court regarding our client's payment rights and obligations. Counsel, you just, counsel who just spoke says we're not in any position to do that. You clearly disagree with that. Yeah. We leave that to the court's discretion in terms of whether the court believes that it can make that determination or wants to remand the case back to the district court. Thank you, Your Honors. We're going to take a brief break at this time. All rise. This is going to be very brief.